724 F.Supp. 25 (1989)
Robert W. JONES and Ann M. Jones, Individually and in their capacity as Co-Administrators of the Estate of Robert M. Jones
v.
The STATE OF RHODE ISLAND: Anthony Solomon, General Treasurer of the State of Rhode Island; Thomas Romeo, in his capacity as Director of the Department of Mental Health, Retardation and Hospitals; John Karkales, in his capacity as Administrator of the Institute of Mental Health; Robert Burns, individually and in his official capacity; Raymond Cardillo, Individually and in his official capacity; Edward Leroux, individually and in his official capacity; Matthew Ward, Individually and in his official capacity.
Civ. A. No. 89-0183 L.
United States District Court, D. Rhode Island.
November 17, 1989.
*26 Amato A. DeLuca, of Revens & Deluca Ltd., Warwick, R.I., for plaintiffs.
Robin E. Feder, Asst. Atty. Gen., and Ellen Evans Alexander, Sp. Asst. Atty. Gen., Providence, R.I., John Brequet, Chief Legal Officer, Dept. of Mental Health, Retardation and Hospitals, Cranston, R.I., for defendants.

MEMORANDUM AND ORDER
LAGUEUX, District Judge.
This matter is presently before the Court on the motion of all defendants to dismiss for failure to state a claim for which relief may be granted under Fed.R.Civ.P. 12(b)(6). The instant action arises as a result of the tragic death of Robert M. Jones. On July 27, 1988, the decedent was committed to the Institute of Mental Health in the State of Rhode Island and diagnosed as a schizophrenic. Plaintiffs assert that on August 31, 1988, when the decedent became agitated, defendant Matthew Ward attempted to subdue him and summoned defendants Raymond Cardillo, Edward Leroux and Robert Burns for assistance. During the struggle, one or more of these defendants applied a strangle-hold to the decedent's neck which caused him to fall to the floor. The decedent was then transported by ambulance to Kent County Memorial Hospital where he was pronounced dead.
At the time that this incident occurred, defendants Robert Burns, Raymond Cardillo, Edward Leroux and Matthew Ward were employed by the State of Rhode Island as attendants at the Institute of Mental Health. Plaintiffs have brought suit against these four defendants individually as well as in their official capacities. Plaintiffs also named as defendants the State of Rhode Island, Thomas Romeo, in his capacity as Director of the Department of Mental Health, Retardation and Hospitals for the State of Rhode Island and individually, John Karkales, in his capacity as Administrator of the Institute of Mental Health and *27 individually,[1] and Anthony Solomon, in his official capacity as General Treasurer of the State of Rhode Island.
Plaintiffs allege that the actions taken by the four attendants resulted from their lack of training in mental health care practices which function was under the control and supervision of Karkales, Romeo and the State of Rhode Island. Furthermore, plaintiffs assert that Karkales, Romeo and the State knew or should have known of the inadequacy of the training procedures for attendants and failed to take any action to remedy the situation.
Plaintiffs Robert W. Jones and Ann M. Jones (parents of the decedent) brought this action for compensatory and punitive damages individually and in their capacity as co-administrators of the decedent's estate. At the heart of the complaint is the claim brought pursuant to 42 U.S.C. § 1983 alleging that the defendants deprived their son of his life and liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs' complaint also alleges violations of a First Amendment right to continued familial association. In addition, plaintiffs attempt to state claims for relief under the Constitution of the State of Rhode Island and under state law. Defendants assert that plaintiffs have not stated a claim for which relief may be granted under § 1983 and, further, request that the Court use its discretion to decline from exercising jurisdiction over the pendent state law claims. The Court after having heard arguments on the motion to dismiss took the matter under advisement. The motion is now in order for decision.
When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all the facts pleaded as true and draw all inferences from those facts in the light most favorable to the nonmoving party. Harper v. Cserr, 544 F.2d 1121, 1122 (1st Cir.1976); Mendonsa v. Time, Inc., 678 F.Supp. 967, 968 (D.R.I.1988). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt from the pleadings that the party opposing the motion can prove no set of facts which would support a claim for relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); Melo-Tone Vending, Inc. v. United States, 666 F.2d 687, 688 (1st Cir.1981); Mendonsa, 678 F.Supp. at 968.
Applying this standard and thereby accepting all the allegations in the amended complaint as true, this Court holds that plaintiffs have not stated a claim for which relief may be granted under § 1983 against the State of Rhode Island or against any individual defendant sued in his official capacity as an employee of the State. Nor have plaintiffs stated a cause of action under § 1983 against the supervisory defendants, Romeo and Karkales, in their personal capacities. Plaintiffs have stated a cause of action under § 1983 against individual defendants Burns, Cardillo, Leroux and Ward sued in their personal capacities for intentional conduct which allegedly deprived the decedent of certain constitutional rights.
The Court dismisses each of plaintiffs' claims asserting a claim for relief on their own behalf for loss of continued family association. The pendent state law claims are also dismissed as against each defendant for whom no independent basis of federal jurisdiction exists. Thus, only defendants Burns, Cardillo, Leroux and Ward can be sued individually for violations of state law.

I. Liability Under 42 U.S.C. § 1983

A. Are the Defendants "Persons" Within the Meaning of § 1983?

Section 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured *28 by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...
The first question the Court must address in determining whether plaintiffs have stated a claim for relief under § 1983 is whether the defendants are "persons" within the meaning of the statute.
In the recent Supreme Court decision of Will v. Michigan, ___ U.S. ___, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are `persons' under § 1983." In reaching its decision, the Court first noted that "`in common usage, the term `person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.'" Will, 109 S.Ct. at 2308 (citations omitted). Furthermore, the Court observed that the language of § 1983 "falls far short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the `usual constitutional balance between the States and the Federal Government,' it must make its intention to do so `unmistakably clear in the language of the statute.'" Id. (citations omitted). Finally, in attempting to decipher the congressional intent as to the scope of § 1983, the Court concluded that Congress did not intend for § 1983 to provide a federal forum for litigants seeking a remedy against a State for alleged deprivations of civil liberties. Id. at 2309.
Although a state official is literally a person, the Supreme Court in Will recognized that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. at 2311 (citing Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). "As such, it is no different from a suit against the State itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)).
Based on the Supreme Court's holding in Will, it is clear that neither the State of Rhode Island nor any of its officials acting in their official capacities, are "persons" that can be held liable under § 1983. Therefore, the Court dismisses each of plaintiffs' claims under § 1983 (contained in Counts I through VIII of the amended complaint) which is brought against the State of Rhode Island or an individual sued in his official capacity as an employee of the State.

B. Personal v. Official Capacity Suits

Although Will establishes that plaintiffs cannot state a cause of action under § 1983 against any of the individual defendants sued in their official capacities, the question remains as to whether plaintiffs may properly bring suit against any or all of the defendants in their personal or individual capacities. In order to answer this question it is necessary to determine the distinctions between official and personal capacity suits. Since an official capacity suit is the equivalent of a suit against the state, see Will, 109 S.Ct. at 2311, the crucial issue is whether the state or the individual is the true party in interest.
In Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Supreme Court considered whether certain civil rights actions, brought pursuant to 42 U.S.C. § 1983, were, as a matter of law, against the State of Ohio, and hence barred by the Eleventh Amendment to the Constitution. Although the instant case does not involve a motion to dismiss based on the Eleventh Amendment, the issue as to whether the individual or the state is the true party in interest is the same.
In Scheuer, the personal representatives of the estates of students who were killed on the campus of a state-controlled university brought a § 1983 action for damages against a number of individuals including the Governor, various officers and enlisted members of the Ohio National Guard, and the university president. Id. at 234, 94 S.Ct. at 1685. The various complaints charged, in essence, that the defendants, acting under color of state law, "intentionally, *29 recklessly, willfully and wantonly" caused an unnecessary Guard deployment on the campus and ordered the Guard members to perform allegedly illegal acts resulting in the students' deaths. Id. at 235, 94 S.Ct. at 1686. The district court dismissed the complaints for lack of jurisdiction over the subject matter on the theory that the actions, although in form against the named individuals, were in substance and effect, against the State of Ohio and thus barred by the Eleventh Amendment. Id. at 234, 94 S.Ct. at 1685.
In reaching its conclusion that the district court had acted prematurely in dismissing the complaints on the stated ground, the Court in Scheuer noted that the plaintiffs had alleged that each of the named defendants, in undertaking the actions described above, "acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner, grossly abusing the lawful powers of office." Id. at 235, 94 S.Ct. at 1686. Considering such allegations in a light most favorable to the plaintiffs, the Court found that petitioners had asserted facts that demonstrated they were seeking to impose individual and personal liability on the named defendants for what they claimed but had not yet established by proofwas a deprivation of federal rights by those defendants under color of state law. Id. at 238, 94 S.Ct. at 1687. Thus, the Court held that the plaintiffs' claims as stated in the complaints were not barred by the Eleventh Amendment. Id.
In Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court attempted to define more clearly the distinction between personal and official capacity suits. First, the Court noted that personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, id. at 165, 105 S.Ct. at 3105, whereas official capacity suits "`generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. (citing Monell, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55). The Court also pointed out that "while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Id. 473 U.S. at 166, 105 S.Ct. at 3105. In addition, the Court noted that if an official should die pending final resolution of a personal capacity action, the plaintiff would have to pursue his action against the decedent's estate. Id. at 166, n. 11, 105 S.Ct. at 3105, n. 11. In an official capacity action in federal court, death or replacement of the named official would result in automatic substitution of the official's successor in office. Id.
In the instant case, plaintiffs' complaint sets forth sufficient allegations of personal conduct to state a claim against the four attendants in their individual capacities.[2] The complaint alleges with particularity the factual predicate which demonstrates that each of these individual defendants acted willfully, knowingly, purposefully, and with malice to deprive the decedent of his life and liberty without due process of law. Plaintiffs clearly seek to impose personal liability against each defendant for his actions which resulted in the death of Mr. Jones. The complaint states specifically that each attendant acted outside the scope of his authority, thereby establishing that plaintiffs are seeking damages against the individual's personal assets and are not merely asserting an action against the State.
Plaintiffs allege that Romeo and Karkales, the supervisory defendants, caused the deprivation of the decedent's life by failing to take any action to remedy the training procedures for attendants which they knew or should have known were inadequate. Thus, in addition to attempting to hold Romeo and Karkales liable as representatives of the State for the *30 State's inadequate training procedures, plaintiffs have asserted claims against Romeo and Karkales personally for their own failure to change the established procedures. Although it is not stated specifically in the complaint, it is logical to infer that plaintiffs are seeking to recover damages against the personal assets of Romeo and Karkales and are not merely asserting an action against the State itself.

C. Has There Been a Deprivation of a Constitutional Right?

In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The conduct complained of in the instant matter was allegedly committed by persons acting under the color of state law. Remaining is the question of whether the complaint avers that the individual defendants' alleged conduct deprived plaintiffs and/or plaintiffs' decedent of a constitutional right.
The complaint in this action states, inter alia, that the defendants deprived the decedent of life and liberty without due process of law in violation of the Fourteenth Amendment to the Constitution. Plaintiffs allege that in committing such acts, defendants acted (1) negligently, and (2) that they acted willfully, knowingly, purposefully and with malice. This Court determines that any injury resulting from the alleged negligence of the defendants, without more, does not amount to a deprivation within the meaning of the Fourteenth Amendment and therefore cannot be the basis of a claim for relief under § 1983.
In Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court held that the "Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." In Daniels, an inmate at a city jail brought a § 1983 action to recover damages for injuries allegedly sustained when he slipped on a pillow negligently left on the stairs by a correctional deputy stationed at the jail. Id.
In reaching its conclusion that any injury caused by the alleged negligence of the official did not amount to a deprivation within the meaning of the due process clause, the Court noted that the word "deprive" in the due process clause connotes more than a negligent act and that the federal courts should not be open to law suits where there has been no affirmative abuse of power. Id. at 330, 106 S.Ct. at 664. Upon reflection, the Court overruled its prior decision in Parratt v. Taylor "to the extent that it states that mere lack of due care by a state official may `deprive' an individual of life, liberty, or property under the Fourteenth Amendment." Id. at 330-331, 106 S.Ct. at 664.
In a companion case to Daniels v. Williams, the Supreme Court held that neither the procedural nor the substantive protections of the due process clause are triggered by lack of due care. Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). There, the Court noted that although lack of due care may lead to serious injury, it "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." Id. at 347-348, 106 S.Ct. at 670 (citing Daniels, 474 U.S. at 331-33, 106 S.Ct. at 664-66). In Williams v. City of Boston, 784 F.2d 430, 434 (1st Cir.1986), the First Circuit followed both Daniels and Davidson in holding that "allegations of common law negligence, without more, do not state a claim for deprivation of liberty without due process of law."
For these reasons, the Court dismisses those aspects of the complaint which allege that the defendants acted negligently to deprive the decedent of life and liberty without due process of law. Plaintiffs' allegations of intentional conduct on the part of defendants Burns, Cardillo, Leroux and Ward, however, in their individual capacities, *31 do state a claim for which relief may be granted under § 1983 and thus survive defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

D. Claims Against Romeo and Karkales in Their Individual Capacities

1. Particularity Requirement, § 1983 Claims
The Court reaches a contrary result with respect to the allegations of intentional conduct on behalf of the supervisory defendants, Romeo and Karkales. As previously stated, the instant supervisors may not be sued in their official capacities based on the decision in Will, supra. Remaining is the question of the supervisory liability of defendants Romeo and Karkales sued in their individual capacities. In Dewey v. The University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982), cert. denied, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983), this Circuit discussed the standard for considering a motion to dismiss a § 1983 complaint:
We require more than conclusions or subjective characterizations. We have insisted on at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts ... Therefore, although we must ask whether the "claim" put forth in the complaint is capable of being supported by any conceivable set of facts, we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why. (underscoring supplied).
Dewey requires that a § 1983 plaintiff must aver objectively and with particularity the facts that support plaintiff's civil rights claim. Dewey also teaches that the factual allegations cannot be conclusions or subjective characterizations. In keeping with the rationale in Dewey, supra, a supervisory official's motion to dismiss was granted in Zralka v. Tures, 708 F.Supp. 948 (N.D.Ill.1989). In Zralka, the plaintiff alleged that a police commander knew or should have known of the unlawful disposition of certain police officers, failed to discipline those officers, and was negligent in hiring, training and supervising them. Id. at 950. There the court found that such general "boilerplate" allegations that a supervisory official was negligent or even grossly negligent in training and supervising subordinates were insufficient to support a claim of supervisory liability in a § 1983 action against the police commander in his individual capacity. Id. Moreover, the court found that in order to state a claim for individual liability "plaintiff must demonstrate personal liability" on the part of the supervisory defendant. Id. "The plaintiff must state specifically how each defendant was personally involved in the deprivation." Del Signore v. City of McKeesport, 680 F.Supp. 200, 203 (W.D.Pa. 1988).
Plaintiffs' complaint makes the following allegations:
20. The actions taken by Defendants Robert Burns, Raymond Cardillo, Edward Leroux, and Matthew Ward were taken as a result of their lack of training and practices under the control and supervision of Defendants John Karkales, Thomas Romeo, and the State of Rhode Island, which training was incomplete and inadequate.
21. Defendant John Karkales, Thomas Romeo and the State of Rhode Island knew or should have known of the inadequacy of the training procedures for attendants and/or their lack of training thereof.
22. Despite their knowledge of the inadequacy of the training procedures for attendants and/or their lack of training, Defendants John Karkales, Thomas Romeo, and the State of Rhode Island failed to take any action whatsoever to remedy their inadequacies. This failure to train and/or to correct the inadequacies of the training procedures amounted to deliberate indifference to the rights and privileges of persons with whom the Institute of Mental Health personnel were to come into contact.
Plaintiffs' Verified Amended Complaint (Complaint), p. 6.
*32 Based on these allegations, plaintiffs state as their third cause of action that defendants "... Thomas Romeo, and John Karkales, by their acts, omissions and deliberate indifferences, as described above, have willfully, knowingly, purposefully, and with malice deprived Plaintiffs' decedent, Robert M. Jones, of his constitutional rights ..." (Complaint, p. 7-8).
On the instant motion to dismiss, the Court must view the complaint in a light most favorable to the plaintiffs. In reading this complaint, however, the Court is at a complete loss in attempting to understand what Romeo and/or Karkales did or failed to do which was a substantial factor in causing decedent's loss of life. The Court finds that plaintiffs' complaint merely alleges a general scenario of claimed constitutional deprivations involving Romeo and Karkales using language that is replete with boilerplate averments that are subjective and conclusory. The pleading standard articulated in Dewey cannot be satisfied with mere buzz words. The plaintiffs must state who did what to whom and why with some minimal particularity and objectivity. The complaint in the case sub judice fails to do so with respect to defendants Karkales and Romeo.

2. Gross Negligence Standard in § 1983 Claims
A § 1983 action cannot be based on a respondeat superior theory of liability. Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); Monell, 436 U.S. at 694, 98 S.Ct. at 2037. The Supreme Court has left open the question whether a plaintiff must establish gross negligence, deliberate indifference, reckless or callous indifference, or intentional conduct to hold an individual state actor liable under § 1983. Gutierrez-Rodriguez v. Cartagena, et al, 882 F.2d 553, 559 n. 4 (1st Cir.1989). See also DeShaney v. Winnebago County Dept. of Social Services, ___ U.S. ___, 109 S.Ct. 998, 1007 n. 10, 103 L.Ed.2d 249 (1989); Daniels v. Williams, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 666 n. 3, 88 L.Ed.2d 662 (1986). The First Circuit, however, has established that in order to successfully pursue a § 1983 claim based on a supervisor's failure to adequately train subordinates, plaintiffs must factually allege at least gross negligence amounting to deliberate indifference. See Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); Williams v. City of Boston, 784 F.2d at 434; Fratiello v. Mancuso, 653 F.Supp. 775, 786 (D.R.I.1987); Leite v. City of Providence, 463 F.Supp. 585, 589-91 (D.R.I.1978). The First Circuit has also stated that in a § 1983 action against defendants in their individual capacities "plaintiff need only establish that the defendants' acts or omissions were the product of reckless or callous indifference to his constitutional rights and that they, in fact, caused his constitutional deprivations." Gutierrez-Rodriguez, 882 F.2d at 567 (citing Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir.1989)).

3. Causal Connection Requirement in § 1983 Claims
In addition to requiring that a supervisory defendant demonstrate at least gross negligence amounting to deliberate indifference, the First Circuit has held that the conduct of a supervisory defendant in a § 1983 action "`... must be causally linked to the subordinate's violation of plaintiff's civil rights.'" Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir.1987) (quoting Voutour, 761 F.2d at 820). See also Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (there must be an "affirmative link" between the conduct of the supervisor and that of the employee). Thus, in Gutierrez-Rodriquez, supra at 569, the Court quoted with approval the district court's definition of the causation requirement necessary to establish supervisory liability under § 1983:
... that the acts or omissions of the supervisors must have `played a substantial part in bringing about or actually causing the injury or damage, and that the [in]jury or damage was either a direct result or a reasonable probable consequence of the act or omission.' We believe this language accurately defines *33 the causation element necessary to establish supervisory liability under § 1983.
In summation, as the Court has discussed earlier, the acts or omissions of defendants must be alleged to have constituted more than ordinary negligence or lack of due care to state a § 1983 claim against defendants in their individual capacities. Additionally, as stated above, a plaintiff must aver a direct causal link between the acts or omissions of the superiors, i.e., defendants Romeo and Karkales, and the constitutional deprivation complained of in the instant action. The failure to aver this nexus is fatal to a § 1983 complaint against supervisory officials. In such a case, the acts or omissions of the superiors must be averred to have been a substantial factor in causing the resulting constitutional harm.
The Court finds that plaintiffs have failed to meet the pleading requirements outlined herein with respect to the claim against supervisory defendants Romeo and Karkales in their individual capacities. Plaintiffs have not averred, with at least minimal particularity, what these defendants did (or failed to do) to whom and why which rises to the level of at least gross negligence. Nor have plaintiffs averred a nexus between the acts or omissions of these defendants and the alleged deprivation of the decedent's constitutional rights.
Accordingly, the motion to dismiss those portions of the amended complaint making § 1983 claims against Romeo and Karkales in their individual capacities is granted without prejudice to the plaintiffs moving to amend their complaint as to such defendants if a cause of action can be alleged with sufficient particularity.

E. First Amendment Right to Continued Family Association

Plaintiffs also assert that the actions of the defendants which allegedly caused Mr. Jones' death deprived them individually of their First Amendment right to continued family association. Because the First Circuit has refused to recognize a parent's right to maintain a § 1983 action based on the loss of companionship of an adult child, the Court dismisses each § 1983 claim which alleges a violation of plaintiffs' First Amendment rights.
In Valdivieso Ortiz v. Burgos, 807 F.2d 6 (1st Cir.1986), this Circuit held that a stepfather and siblings did not have a constitutionally protected liberty interest in the companionship of their adult son and brother who was allegedly beaten to death by guards while an inmate at a detention center. In reaching its conclusion, the Court noted that the case before it differed from those in which the Supreme Court had recognized a substantive right in the parent/child relationship in two respects. Id. at 8. First, decedent, "who was over 21 at the time of his death, was not a minor child still within `the care, custody, and management' of his parents." Id. Second, the state was not seeking to impose upon the decedent's family its own choice as to how or by whom he should be reared. Id. In addition, the Court noted that the Supreme Court had never held that governmental action that affects the parental relationship only incidentallyas it did in this particular casewas susceptible to challenge for a violation of due process. Id.
Although the Court in Valdivieso distinguished the facts of the case before it from those involving at least one legal parent, id. at 9, it stated in a footnote that its opinion meant that a claim asserted personally by the decedent's mother would also fail. Id. at 7 n. 1. Furthermore, the Court stated,
It does not necessarily follow that the incidental deprivation of even a natural parent's parental rights is actionable simply because the relevant deprivation of life is shocking. Id. at 9.
In Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 563 (1st Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), the First Circuit cited the decision in Valdivieso as standing for the proposition that "a parent cannot maintain a claim for loss of familial association under 42 U.S.C. § 1983 unless the government action in question is directly aimed at the relationship between a parent and young child." See also Guzman Rosa v. *34 de Alba, 671 F.Supp. 882, 883 (D.Puerto Rico 1987).
In light of the established precedent in the First Circuit, this Court concludes that plaintiffs have not stated a claim for which relief may be granted under § 1983 based on a First Amendment right to continued family association. Therefore, the Court dismisses each claim alleging a violation of such right.

II. Due Process Under the Constitution of the State of Rhode Island
Plaintiffs allege in Counts IX through XII of their amended complaint that defendants deprived the decedent of his right to due process of law in violation of Article I, Section 2 of the Constitution of the State of Rhode Island.
Since the Court has dismissed all federal claims against the State of Rhode Island, Solomon, Romeo and Karkales, no independent basis of federal jurisdiction exists as to these defendants. Accordingly, because of the absence of such federal jurisdiction, this Court must also dismiss the pendent state constitutional claims asserted against them. Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Clark v. Taylor, 710 F.2d 4 (1st Cir.1983). See also Fleet Credit Corporation v. Sion, 699 F.Supp. 368, 381 (D.R.I.1988). With respect to the allegations against Burns, Cardillo, Leroux and Ward in their individual capacities, an independent basis of federal jurisdiction does exist under § 1983. Therefore, it is within this Court's discretion to retain jurisdiction over the pendent claims alleging that these defendants deprived the decedent of his right to due process of law in violation of Article I, Section 2 of the Rhode Island Constitution.
Prior to December of 1986, Article I, Section 2 of the Rhode Island Constitution provided only that
All free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens.
Although this language in the original Constitution (which was drafted in 1842 and became effective in May 1843) was essentially a guarantee of equal protection of the laws, City of Warwick v. Almac's Inc., 442 A.2d 1265, 1270 (R.I.1982), the Rhode Island Supreme Court established that this provision was advisory and not mandatory, and was addressed to the General Assembly by way of advice and direction, rather than to the courts by way of enforcing restraint upon the law-making power. Advisory Opinion to the Governor, 510 A.2d 941, 942 (R.I.1986); Sepe v. Daneker, 76 R.I. 160, 168, 68 A.2d 101, 105 (1949). In 1986, however, the Constitutional Convention and the voters in the November election provided the State of Rhode Island with a new constitution. The drafters of the revised Constitution supplemented the "advisory" language of Article I, Section 2 by adding the specific guaranty that
No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws.[3]
The Constitution of 1842 even as amended profusely over the years never contained a "due process" or "equal protection" clause.[4] Therefore, the addition of these two clauses to the Constitution in 1986 is a matter of some significance in the constitutional history of this state.
The intent of the drafters in adding a "due process" and an "equal protection" *35 clause to the new Constitution clearly was to parallel the language of the Fourteenth Amendment to the United States Constitution. R.I. Const. art. I, § 2 (annotated edition). The Constitutional Convention Committee Report on this subject stated that including these protections in the state Constitution "would create an independent state foundation for individual rights." Id. (quoting the Committee Report, p. 6). It was also stated by the Committee that it wanted to protect the citizens of the state if the federal judiciary were to adopt a narrow interpretation of the Fourteenth Amendment in the future. Id.
In light of the expressed intent of the drafters in adding a due process clause to the Rhode Island Constitution and the circumstances culminating in the constitutional change, it appears clear that the due process clause of Article I, Section 2 creates new substantive rights for all persons in the State of Rhode Island. This Court, therefore, must conclude at this point in time that in adding such a provision, the drafters intended to create an implicit right to sue state actors for damages for violations of this newly created right.
In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court first recognized the existence of an implied right to sue federal officials in federal court on the basis of violations of the United States Constitution. In inferring such a cause of action under the Fourth Amendment to the Constitution, the Court stated that the case did not involve any "special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 396, 91 S.Ct. at 2004. In addition, the Court noted that Congress had not explicitly prohibited private damage suits against federal officials for violations of the Fourth Amendment. Id. at 397, 91 S.Ct. at 2005.
Invoking a Bivens-like analysis in the present case leads this Court to conclude that there is an implied right to sue a state official individually for damages resulting from an alleged violation of the due process clause of Article I, Section 2 of the Rhode Island Constitution. The plaintiffs in Bivens were precluded from bringing an action under 42 U.S.C. § 1983 because the alleged constitutional violations were committed by federal rather than state officials. Plaintiffs in this case cannot seek relief under a § 1983 type state statute because there is none. In addition, there is no state law which would prohibit allowing a cause of action to be implied directly from a provision in the Rhode Island Constitution or any special factors counselling hesitation in this area. Therefore, this Court opines that it is appropriate to allow a cause of action for a state constitutional tort to arise directly under the due process clause of Article I, Section 2.
For these reasons, the Court declines to exercise its discretion to dismiss Counts IX and X of the amended complaint alleging that defendants Burns, Cardillo, Leroux and Ward deprived the decedent of his life without due process of law in violation of Article I, Section 2 of the Rhode Island Constitution.
The Court is mindful, however, that the parameters of this constitutional cause of action must be limned by the Rhode Island Supreme Court. Therefore, if necessary in this case, after a record is made, the matter will be certified to that Court for an exposition on the proper interpretation of this new state constitutional provision.
Although the State has been dismissed as a defendant in this case, an interesting question arises as to the extent of the State's sovereign immunity in a suit brought directly under a provision of the Rhode Island Constitution. The Rhode Island Supreme Court has held that Rhode Island General Law Section 9-31-1 (the State Tort Claims Act), constitutes a broad waiver of the state's Eleventh Amendment immunity from tort actions brought in federal court. Laird v. Chrysler Corp., 460 A.2d 425 (R.I.1983). This Court has previously held that in addition to waiving Eleventh Amendment immunity in tort actions, the State Tort Claims Act also waives the state's immunity from suits brought in federal court under § 1983. Marrapese v. State of R.I., 500 F.Supp. 1207, 1222-23 *36 (D.R.I.1980). Although a state is no longer a proper defendant in a suit brought under § 1983, Will v. Michigan, supra, the parallels the Court in Marrapese drew between "common law" and "constitutional" torts are directly relevant in the case before this Court now. In Marrapese, the Court detailed the close relationship between tort law and § 1983 and concluded that it was proper to extend the State's waiver of immunity from suit in federal court to include situations involving a "constitutional" rather than a "common law" tort. Marrapese, supra. Similarly, it would also be proper to extend Rhode Island's waiver of sovereign immunity in tort actions to include actions brought directly under the state constitution.
The addition of the due process clause to Article I, Section 2 of the Rhode Island Constitution, however, may constitute an independent waiver of sovereign immunity for violation of a constitutional right, thus providing a plaintiff with a cause of action for damages against the State arising directly from the state constitution and unlimited by the strictures of the State Tort Claims Act. This and other interesting questions arising from the due process clause now securely nestled in the state constitution will have to be answered by the state courts.

III. Other Pendent State Law Claims
Since the Court has not dismissed all of the federal claims brought pursuant to 42 U.S.C. § 1983 against defendants Burns, Cardillo, Leroux and Ward, it is not willing to exercise its discretion to dismiss the pendent state law claims of negligent wrongful death, assault and battery and infliction of emotional distress asserted against them. The Court has dismissed all federal claims against the State of Rhode Island, Solomon, Romeo and Karkales and therefore must also dismiss all pendent state law claims asserted against each of those defendants. Aldinger v. Howard, supra; Clark v. Taylor, supra.
If this Court were free to retain jurisdiction over the pendent claims asserted against the State, it would have to consider whether the State could be held liable under the doctrine of respondeat superior for an intentional tort committed by an employee. As previously noted, the Rhode Island Supreme Court has held that, by statute, Rhode Island has broadly waived Eleventh Amendment immunity from suit in federal court. Laird v. Chrysler Corp., supra. Moreover, in Saunders v. State, that Court held that the State could be held liable under the doctrine of respondeat superior for the negligence of an employee. 446 A.2d 748, 752 (R.I.1982). Under Rhode Island law, an employer can be held liable for an intentional tort committed by his employee only if the conduct occurred while the employee was performing a duty in the course of his employment and by express or implied authority from the employer. Drake v. Star Market Co., 526 A.2d 517, 519 (R.I.1987). Yet, to date, the Rhode Island Supreme Court has not determined whether the General Assembly intended to subject the State to liability for the intentional torts of its employees under the State Tort Claims Act. However, since plaintiffs in this case have failed to establish an independent basis for federal jurisdiction over the State of Rhode Island, the Court is not required to decide this issue.

CONCLUSION
For the reasons stated herein, this Court dismisses each allegation contained in Counts I through VIII of plaintiffs' amended complaint which asserts a cause of action under § 1983 against the State of Rhode Island or against any named individual defendant sued in his official capacity as an employee of the State. The Court also dismisses the allegations of negligent conduct asserted in Counts II and IV of that complaint and all claims for relief based on a constitutional right to continued family association. Additionally, the Court dismisses the allegations contained in Count III which assert a cause of action under § 1983 against defendants Romeo and Karkales in their personal capacities. This dismissal is without prejudice to plaintiffs moving to amend their complaint as to those defendants if a claim can be alleged with particularity.
*37 Thus, the only claim for relief under § 1983 which remains in the case at this time is that contained in Count I of the amended complaint asserting personal liability against defendants Burns, Cardillo, Leroux and Ward.
The Court allows to be maintained in this case only those pendent state law claims set forth in counts IX through XVII of the amended complaint as are asserted against defendants Burns, Cardillo, Leroux and Ward.
It is so Ordered.
NOTES
[1] Although the caption of the complaint does not indicate that Romeo and Karkales were sued both in their official and individual capacities, the body of the complaint so alleges.
[2] The four attendants are defendants Robert Burns, Raymond Cardillo, Edward Leroux and Matthew Ward.
[3] The revised version of Article I, Section 2 also states "No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state. Nothing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof."
[4] Article I, Section 10 of the old Constitution provided that an accused in a criminal prosecution would not be deprived of life, liberty, or property unless by the judgment of his peers or by the law of the land. That is as close to a "due process" clause as the Constitution of 1842 came, but it was only applicable to criminal cases. Article I, Section 10 was reenacted with only gender reference changes in the new Constitution.