Timothy **EASTRIDGE**, Plaintiff,

v.

**RHODE ISLAND COLLEGE,** Board of Governors for Higher Education, Dr. Dix Coons, Dr. Richard Weiner, and John Nazarian, Defendants.

No. C.A. 96–458L.

United States District Court, D. Rhode Island.

March 2, 1998.

Julius C. Michaelson, Samuel D. Zurier, Michaelson & Michaelson, Providence, RI, for Plaintiff.

Jay S. Goodman, Providence, RI, Nicholas Trott Long, Providence, RI, for Defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. At issue is whether Rhode Island College ("RIC"), the Board of Governors for

Higher Education's ("Board of Governors"), Dr. Dix Coons, Chair of the Department of Modern Languages at RIC ("Coons"), Dr. Richard Weiner, Dean of the School of Arts and Sciences at RIC ("Weiner"), and John Nazarian, President of RIC ("Nazarian"), (together referred to as "defendants") violated the rights of plaintiff Timothy Eastridge for failing to appoint him to a tenure track faculty position at RIC.

In his multi-count complaint, plaintiff alleges that defendants discriminated against him because of his race, refusing to hire him for the tenure track position because he is white. Specifically, he alleges in Count I that defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e ("Title VII"). In Count II, plaintiff claims a violation of 42 U.S.C. § 1981, which guarantees equal rights under the law. In Count III, he alleges that the actions of defendants deprived him of equal protection guaranteed under the law by the 14th Amendment to the United States Constitution. Counts IV, V and VI make claims for relief under certain Rhode Island statutes and the Rhode Island Constitution. In Count IV, plaintiff claims defendants engaged in unlawful employment practices in violation of R.I. Fair Employment Practices Act, R.I.Gen.Laws § 28–5–7 ("FEPA"). In Count V, plaintiff alleges that defendants engaged in discrimination prohibited by R.I.Gen.Laws § 42–112–1, the state analog to 42 U.S.C. § 1981, also referred to as the Rhode Island Civil Rights Act of 1990 ("RICRA"). Finally, in Count VI plaintiff sets forth the claim that the actions of defendants denied him equal protection in violation of Article I, § 2 of the Rhode Island Constitution. Defendants, having denied all essential allegations of the Complaint, filed a motion for summary judgment on all counts.

## I. Background

In considering this motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, here plaintiff. Viewed in that manner, the facts in this case are as follows:

In the winter of 1993, RIC advertised the opening of a tenure track position in French in the Department of Modern Languages and invited persons with strengths in the Francophone culture and literature of Africa and the Caribbean to apply. At the time, plaintiff, a white male, was completing a three-year term appointment as an Assistant Professor of French in that same Department.[1]

The Search Committee, headed by Coons, selected plaintiff as one of four candidates to be interviewed from an applicant pool of fifteen. The three other interview candidates were Joseph James Byrnes, a white male, Ahmed Bangura, a black African male, and Amy Wygant, a white female. In April, 1994, after the interviews, the Committee prepared a report recommending Bangura as the top choice and Eastridge as the second choice. The Committee made the following comments about plaintiff in their report:

> Tim Eastridge is an experienced and competent instructor of French language, culture and literature ... While at Rhode Island College he has taught all levels of language as well as literature courses in both the 16th/17th century, the survey course which treats this period, French Civilization, as well as Applied Linguistics which is required for students in Secondary Education.... It is precisely Dr. Eastridge's demonstrated versatility and experience that make him a strong candidate for the position.

The Committee report also addressed Mr. Bangura's credentials, stating:

> As a practitioner of Islam, he will bring to the department and college a cultural background and interests significantly different from those now present within the department. Moreover, he is a member of a protected minority.

The Committee's conclusions were as follows:

> In the best of both worlds the College would be able to hire both Ahmed Shiekh Bangura in English/Comparative Litera-

1. As best the Court can tell from the record, plaintiff had been the only white male appointed to that Department in the last twenty-eight years.

ture and/or French and Tim Eastridge for the position of French. Recognizing that under present fiscal constraints this is not likely to happen, we recommend that the position be offered first to Ahmed Sheikh Bangura. Should he not accept, we recommend that the position be offered to Tim Eastridge.

RIC's Affirmative Action Office had set a goal for the make up of the faculty of the Department of Modern Languages as follows: 70.4% female, 12.0% handicapped and 26.9% minority. The Affirmative Action Office had instructed hiring officials to take this goal into consideration when making hiring decisions. The Affirmative Action policy itself requires the preparation of the Affirmative Action Monitoring Report in hiring situations. The Report prepared by Coons noted the race of the finalists and contained additional comments. Under "Selection," where Coons was required to note specific reasons for selection of Bangura as the number one candidate, he wrote:

"Affirmative action concerns—Dynamic teaching demonstration. Non-western perspective—can teach Arabic."

Under the "Comments" section, Coons wrote the following with respect to Bangura:

"Excellent affirmative action candidate who can do French, Arabic, Spanish and German. Department came up with a fine final pool after a scrupulous search in accordance with federal public policy guidelines."

In May, 1994, Nazarian authorized Coons to offer the position to Bangura, who declined the position after having procured employment elsewhere. Coons then inquired as to whether he was to offer the position to plaintiff, the Committee's second choice. On May 20, 1994, Weiner injected himself into the situation and proposed Wygant's name to Vice President for Academic Affairs John Salesses. Weiner, in contrast to the Committee, had preferred Wygant over plaintiff for various reasons. Weiner claims that he was troubled by his interview with plaintiff and was impressed by Wygant's "extraordinary recommendations from a world famous scholar in the field, Rainer Nagele." Plaintiff contends that Weiner's reasons were a

pretext as Nagele is a German, not a French, scholar. According to plaintiff, Weiner's preference was motivated by the affirmative action plan which set the benchmark of 70.4% female hires. The recognition of Bangura as an "affirmative action candidate" on the Monitoring Report indicates, plaintiff alleges, that Weiner's preferences were substantially influenced by affirmative action concerns.

Salesses informed Weiner that the job offer to Bangura had been based on his "unique profile" and that French enrollments were low and declining at the time. Later that week, RIC the position, appointing neither plaintiff or Wygant. The facts are in dispute as to whether the decision to cancel the position was made exclusively by Salesses, based on declining enrollments in French, as defendants claim or made by Weiner, based on affirmative action factors, as plaintiff argues. Plaintiff contends that Salesses' claim of declining enrollments is a pretext because matriculating students at RIC register through a computerized system which requires them to enter their Fall 1994 course selection by telephone. Salesses had access to the same enrollment numbers for the Fall semester at the time he approved offering the position to Bangura as he did when he decided to cancel the position.

Plaintiff instead was offered and accepted a one year appointment in the Department. When the appointment expired, he was not renewed. There is no indication in the record as to whether or not any position was offered to Wygant.

In this case, filed on August 9, 1996, plaintiff asks for a declaratory judgment that the practices complained of are unlawful and violative of the statutes and constitutional provisions mentioned above; that defendants be permanently enjoined from engaging in such unlawful practices; that the Court order modification or elimination of the practices, policies, customs and usages of defendants; that plaintiff be immediately assigned to a tenure track position in the Department of Modern Languages at RIC; and for compensatory damages as well as whatever other relief the Court deems proper. After discovery, on May 1, 1997, defendants filed this motion for summary judgment on all counts.

Plaintiff duly objected to the motion and both sides filed briefs. After hearing oral arguments, the Court took the matter under advisement. It is now in order for decision.

## II. Standard For Decision

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

## III. Discussion

### A. Title VII

■ Title VII makes it unlawful for an employer "to discriminate against any indi-

vidual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Defendants argue that in deciding this summary judgment motion, the Court should apply the Supreme Court's recommended framework for discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) The *McDonnell Douglas* paradigm has been summarized in the following manner by the Supreme Court:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminary reason for the employee's rejection. *McDonnell Douglas*, 411 U.S. at 801. Third, should the defendant carry the burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

*Burdine*, 450 U.S. at 252–253. Defendants' argument, however, completely ignores this Court's decision in *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167 (D.R.I.1991) which specifically addressed the applicability of the *McDonnell Douglas* framework to summary judgment motions in discrimination cases. In *Gannon*, this Court noted:

> The *McDonnell Douglas* system for allocating burdens and presumptions offers a handy way to conceptualize the proof of a discrimination claim, but it does not mesh well with the actual practice of litigation and is a source of great confusion to trial judges who must give it practical effect.

*Gannon*, 777 F.Supp. at 169.

As noted in *Gannon* and reemphasized herein, one of the difficulties with applying the *McDonnell Douglas* framework at the

summary judgment stage is that it "invites trial judges to weigh evidence and assess the credibility of witnesses" *Id.*[2] It is well established, however, that in deciding summary judgment motions, judges should refrain from assessing the credibility of the witnesses. *Id.*[3] Therefore, this Court determined that the *McDonnell Douglas* framework "should permit pretrial disposition of a case only if a party does not carry his initial burden of production." *Gannon,* 777 F.Supp. at 170. If the plaintiff can establish a prima facie case of discrimination, a summary judgment motion cannot be entered in favor of defendants. *Id.*

This case is further complicated by the fact that the alleged discrimination is what is often called "reverse discrimination." Under *McDonnell Douglas,* a plaintiff must show that he or she belongs to a protected group in order to establish a prima facie case of disparate treatment discrimination. The complainant in a Title VII case must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (1) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants, (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas,* 411 U.S. at 802. Although the supreme Court has yet to address the subject specifically, many lower courts have recognized that requiring a reverse discrimination plaintiff to establish a prima facie case in accordance with *McDonnell Douglas* would virtually preclude such plaintiff from bringing a Title VII discrimination claim. *See, e.g., Bellairs v. Coors Brewing Co.,* 907

F.Supp. 1448 (D.Co.1995); *Notari v. Denver Water Dept.,* 971 F.2d 585 (10th Cir .1992); *Livingston v. Roadway Exp., Inc.* 802 F.2d 1250 (10th Cir.1986) *Parker v. Baltimore & O.R. Co.,* 652 F.2d 1012 (D.C.Cir.1981); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63 (6th Cir.1985). Thus, using the *McDonnell Douglas* paradigm in this case would cause a conflict with the Supreme Court's clear assertion that Title VII applies to whites as well as non whites. *McDonald v. Sante Fe Trail Transp. Co.,* 427 U.S. 273, 279–280, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Recognizing this problem facing a reverse discrimination plaintiff, many lower Courts have modified *McDonnell Douglas* and allowed such a plaintiff to substitute for the requirement of membership in a protected group, the showing that defendant is that "unusual employer who discriminates against the majority" in order to establish a prima facie case of discrimination. *Olenick v. New York Telephone, A NYNEX Co.,* 881 F.Supp. 113, 114 (S.D.N.Y.1995), citing *Parker* 652 F.2d at 1017; *Notari,* 971 F.2d at 589; and *Murray* 770 F.2d at 67.

This Court opts not to follow this modification of the *McDonnell Douglas* prima facie elements for reverse discrimination cases, because requiring a reverse discrimination plaintiff to show that the specific employer has displayed a pattern of discrimination against the majority in the past imposes a more onerous burden on such a plaintiff as compared to any plaintiff from any protected group. This is antagonistic to the very purposes of Title VII itself. In *McDonnell Douglas,* the Court in a footnote recognized that "the facts necessarily will vary in Title VII case, and the specification above of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell*

**2.** In *Gannon,* this Court noted that while the Supreme Court suggests a direct and an indirect way for the plaintiff to prove intent to discriminate, both methods require judgments of credibility, weighing and balancing evidence and assessing possible inferences. *Id.* at 170.

**3.** This Court also cited to the advisory committee's note to Rule 56(c), which states:

"Where an issue as to a material fact cannot be resolved without observation of the demeanor

of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Id.* at 169.

The 7th Circuit in deciding a similar case, made the following observation:

"We recognize that summary judgment is frequently inappropriate in discrimination cases because intent, and therefore credibility, is often a crucial issue." *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir.1989).

*Douglas,* 411 U.S. at 802, n. 13. Thus, the elements for a prima facie case articulated in *McDonnell Douglas* are not the exclusive means by which a plaintiff can establish the basics of a discrimination claim. The Supreme Court reinforced this proposition in *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), stating:

> The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." *Burdine,* supra, at 253. In other words, is "the employer ... treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), quoting *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The prima facie case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco, supra,* 438 U.S. at 577.

*Aikens* 460 U.S. at 715.

In short, attempting to cram a reverse discrimination case into the *McDonnell Douglas* framework is not a reasonable approach in these cases.

■ This Court, instead, chooses to follow the Supreme Court's advice in *Aikens* and, quite simply, will look to whether or not an inference can be drawn from the established facts that the employer here treated plaintiff less favorably because of his race in the particular case. As one court has stated, in deciding such cases, the fact finder must keep in mind that "an employer may refuse to hire an employee for good reasons, bad reasons, reasons based on erroneous facts, or for no reason at all, so long as its actions are not based on discriminatory purposes." *Lewis–Webb v. Qualico Steel Co., Inc.,* 929 F.Supp. 385, 391 (M.D.Ala.1996).

■ The record here clearly raises an inference of discrimination and presents a gen-

uine dispute as to material facts. The outcome of this case will be dictated by an assessment of the credibility of the witnesses. If the RIC officials are believed, race was not a factor in the decision to refrain from filling the position and thus not hire plaintiff. If some or all of those officials are deemed not credible, then a jury can conclude that race was a motivating factor in the decision to deny plaintiff a tenure track position. Whether discriminatory reasons were the basis for defendants' decision, thus, cannot be determined at this stage of the proceedings. Therefore, defendants motion for summary judgment on Count I must be denied.

**B. 42 U.S.C. § 1981**

■ Title 42 U.S.C. § 1981 provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ..." 42 U.S.C. § 1981. Like Title VII, § 1981 prohibits racial discrimination in private employment against whites as well as nonwhites. *McDonald,* 427 U.S. at 286. The causes of action created by Title VII and § 1981 are so similar that many courts have determined that the elements of a prima facie case are identical for the two. *See, e.g., Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3d Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202, (1984); *Huebschen v. Dep't of Health and Soc. Services,* 716 F.2d 1167, 1170 (7th Cir.1983); *Lincoln v. Bd. of Regents of Univ. Sys. of Georgia,* 697 F.2d 928, 935 n. 6 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102, (1983); *Gray v. Bd. of Higher Educ., City of New York,* 692 F.2d 901, 905 n. 8 (2d Cir.1982); *Lewis v. Cent. Piedmont Community College,* 689 F.2d 1207, 1208 n. 3 (4th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983); *Johnson v. Alexander,* 572 F.2d 1219, 1223 n. 3 (8th Cir.1978), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978).

Again, at issue is whether or not plaintiff was denied a tenure track position because of his race. Before this issue can be decided, credibility determinations must be made by

the jury. The record as it currently stands contains conflicting factual assertions and inferences as to whether defendants made their decision not to hire Eastridge because he was a white male. Therefore, for the reasons hereinbefore expressed, defendants' motion with respect to Count II must be denied.

### C. Equal Protection Claim

Count III of plaintiff's complaint raises a claim under the Equal Protection Clause of the 14th Amendment. This Court will treat defendants' motion for summary judgment on this claim as a motion to dismiss under F.R.C.P.Rule 12(b)(6). Dismissal under 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also* 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1357 (2ed.1990). In short, dismissal is only appropriate if plaintiff has failed to state a claim upon which any relief can be granted.

Plaintiff's failure to invoke 42 U.S.C. § 1983 is fatal to his claim. It is clearly established law in the federal courts that the 14th amendment does not create a cause of action against state actors.[4] The 14th amendment creates rights but it does not create a means by which a claim for recovery for violation of those rights can be brought before a federal court. 42 U.S.C. § 1983, on the other hand, establishes no substantive rights itself but it does create a cause of action for deprivation of federal rights committed under color of state law.[5] It provides the means by which a plaintiff can recover for the violation of his or her federal constitutional rights including those secured by the

14th amendment. Therefore, this Court dismisses the Equal Protection claim as stated in Count III because it fails to state a claim upon which relief can be granted.

### D. State Claims

Pursuant to 28 U.S.C.A. § 1331, this Court may exercise supplemental jurisdiction over state law claims which clearly "form part of the same case or controversy" that is before the Court and over which the Court has proper jurisdiction. *Iacampo v. Hasbro et al*, 929 F.Supp. 562, 570 (D.R.I.1996), citing *Hart v. Mazur*, 903 F.Supp. 277, 281 (D.R.I. 1995).

#### a. Rhode Island General Laws Title 28, Chapter 5

■ In Count IV, plaintiff asserts a claim under FEPA, R.I.Gen.Laws § 28–5–7, which states, in relevant part:

**Unlawful employment practices.**—It shall be an unlawful employment practice:

(1) For any employer:

(i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, handicap, age, sexual orientation, or country of ancestral origin, or

(ii) Because of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment . . .

■ FEPA, according to the Rhode Island Supreme Court, "unmistakably forbids individual acts of discrimination as well as patterns of discriminatory practice." *Iacampo*, 929 F.Supp. at 574, citing *Newport Shipyard*

---

4. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court recognized the existence of an implied right to sue federal officials in federal court on the basis of violations of the United States Constitution under certain circumstances. There is no cause of action under the U.S. Constitution for claims against state actors, however. Such actions must be brought under 42 U.S.C. § 1983 or other appropriate statutory provisions creating remedy for violations of constitutional rights.

5. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, . . . subjects, or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

*v. R.I. Com'n for Human Rights,* 484 A.2d 893, 897 (R.I.1984). FEPA is intended to be Rhode Island's analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to FEPA. *Iacampo,* 929 F.Supp. at 574, citing *Marley v. United Parcel Serv., Inc.,* 665 F.Supp. 119, 128 (D.R.I.1987). Thus, this Court must deny defendants' motion for summary judgement on Count IV for the reasons previously expressed with respect to Counts I and II.

### b. Rhode Island General Laws Title 42, Chapter 112

■ Plaintiff has also sought a claim, in Count V, under RICRA, R.I.Gen.Laws § 42-112-1, made actionable through § 42-112-2.[6] This statute was clearly patterned after 42 U.S.C. § 1981. In *Moran v. GTech Corp.,* 989 F.Supp. 84, 90–92 (D.R.I.1997), this Court observed that the "logical inference to be drawn is that the state legislature intended a cause of action pursuant to § 42÷112-2 to mirror the federal cause of action provided by § 1981." Again, as this Court noted in *Moran,* while a federal court should be reluctant to retain supplemental jurisdiction when there is inadequate guidance from the state regarding the question presented, such a problem is not present here as the Rhode Island Supreme Court has provided an outline for structuring this cause of action. *Id.*

■ Since there are material facts at issue as to whether defendants had discriminatory motives in failing to hire Eastridge, this Court must deny the motion for summary judgment on Count V.

### c. Rhode Island Constitution Article 1, § 2

■ Plaintiff's final claim, Count VI, alleges that defendants violated his rights as guaranteed by Article 1, § 2 of the Rhode Island Constitution. This Article came into the Rhode Island Constitution in 1986 and provides:

No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race … be subject to discrimination by the state, its agents or any person or entity doing business with the state.

This Court in *Jones v. State of Rhode Island,* 724 F.Supp. 25, 35 (D.R.I.1989) observed that this clause was clearly added to parallel the language of the 14th Amendment to the United States Constitution. *See also In Re Advisory from the Governor,* 633 A.2d 664, 669 (R.I.1993); *Kleczek v. Rhode Island Interscholastic League, Inc.,* 612 A.2d 734, 738 (R.I.1992).: In *Jones,* this Court employed a *Bivens*-type analysis to reach the conclusion that Article I, Section 2, created an implied right to sue a state official individually for damages resulting from an alleged violation of its provisions. *Id.* at 35–36. In view of the passage of time and the failure of the Rhode Island Supreme Court to deal with this issue, this Court elects to now revisit this matter and, thus, decide whether there is a cause of action available to this plaintiff in this case under that state constitutional provision. Again, the Court will treat defendants' motion as one to dismiss under F.R.C.P. 12(b)(6), despite the fact that defendants have failed to raise this issue.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the U.S. Supreme Court recognized the existence of an implied right to sue federal officials in federal court for violations of the United States Constitution. *Bivens,* however, is intended to apply where it is the only means by which relief can be granted; i.e. in a situation where absent the cause of action, the plaintiff would have no judicial redress for the violation of his or her constitutional rights. *Bivens,* 403 U.S. at 397. In making a determination as to whether a constitutional provision creates a cause of action, the First Circuit has cautioned courts as follows:

---

6. R.I.Gen.Laws § 42-112-1:
   (a) All persons within the state, regardless of race, color, religion, sex, handicap, age or coun-

try of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts.

**170**

When there is a request for the judicial creation of a supplemental damages remedy arising directly under a constitutional provision, *Bivens*, we think, teaches that a federal court should proceed with caution. It should carefully assess the existing remedies and consider the extent of (sic) which there has been a Congressional or other determination that the supplemental remedy should not be available.

*Taylor v. State of R.I., Dep't of Mental Health, Retardation and Hospitals*, 726 F.Supp. 895, 901 (D.R.I.1989), citing *Kostka v. Hogg*, 560 F.2d 37,42 (1st Cir.1977).

This plaintiff is not in the unfortunate position of having only *Bivens*-like relief available to him. He has asserted claims under Title VII, FEPA, and RICRA, and those claims will go forward to trial. In *Taylor*, this Court noted that there had not been a determination made by any Rhode Island state court on the question of whether the anti-discrimination provisions of Article I, § 2 provide a distinct and direct constitutional cause of action for the proscribed discriminatory conduct. *Taylor*, 726 F.Supp. at 901. There still has not been such a decision. The Rhode Island legislature has dealt with the situation by making remedies available, by enacting RICRA in 1990 in addition to already existing FEPA and, thus, there are adequate remedies available under state law for a plaintiff such as this. In short, to allow a direct constitutional cause of action based on the anti-discrimination provisions of Article I, Section 2 would not provide relief otherwise unavailable to plaintiff.

It seems evident to this writer at this time that the Rhode Island Supreme Court, when faced with this issue, will conclude, relying on *Bivens* that there is no need to create a constitutional cause of action under the circumstances of this case. Therefore, this Court dismisses Count VI for failure to aver a state cause of action.

**IV. Conclusion**

For the foregoing reasons, defendants' motion for summary judgment is denied as to Counts I, II, IV and V of plaintiff's complaint and Counts III and VI are dismissed for failure to state a claim upon which relief can be granted.

It is so ordered.