Lisa **REID**

v.

**CITIZENS SAVINGS BANK/CITIZENS TRUST COMPANY.**

Civ. A. No. 94–0622ML.

United States District Court, D. Rhode Island.

April 21, 1995.

their land use dispute with the Town of Bow into a section 1983 claim.

Stephen T. Fanning, Barrington, RI, for plaintiff.

Mark A. Pogue, Edwards & Angell, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court on Defendant's motion to dismiss plaintiff's claim for money damages and civil penalties pursuant to the Rhode Island Parental and Family Medical Leave Act, R.I.G.L. §§ 28–48–1 to 28–48–10 (the Act). The plaintiff Lisa Reid (Reid), an employee of defendant Citizens Savings Bank (Citizens), has filed a complaint against Citizens alleging violations of the Rhode Island Act and the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654. The motion to dismiss pertains only to Reid's claim under the Rhode Island Parental and Family Medical Leave Act and does not involve claims under the federal Family and Medical Leave Act.

Reid contends that because of Citizens' discriminatory conduct she is entitled to damages and civil monetary penalties pursuant to the Act. It is Citizens' position that the Act provides only equitable relief to the employee who prevails on a claim under the Act. Citizens contends that the Act does not provide the employee with a cause of action to collect money damages or civil monetary penalties.

The limited issue before this court is one of statutory construction. Because the Act is relatively new there have been no reported state court decisions interpreting its provisions. Consequently, this court must interpret the language of the Act to answer the question presented.[1]

1. The Act provides the following:
"28–48–1. Definitions.—As used in this chapter, the following words and terms shall have the following meanings:
(a) 'Director' means the director of the department of labor.
(b) 'Employee' means any full-time employee who works an average of thirty or more hours per week.
(c) 'Employer' means and includes (1) any person, sole proprietorship, partnership, corporation or other business entity that employs fifty (50) or more employees, (2) the state of Rhode Island (including the executive, legislative and judicial branches), and any state department or agency that employs any employees, and (3) any city or town or municipal agency that employs thirty (30) or more employees and (4) any person who acts directly or indirectly in the interest of any employer.
(d) 'Parental Leave' means leave by reason of (1) the birth of a child of an employee; or (2) the placement of a child sixteen (16) years of age or less with an employee in connection with the adoption of such child by the employee.

(e) 'Serious illness' means a disabling physical or mental illness, injury, impairment or condition that involves inpatient care in a hospital, a nursing home or a hospice; or outpatient care requiring continuing treatment or supervision by a health care provider.

(f) 'Family member' means a parent, spouse, child, mother-in-law, father-in-law, or the employee him or herself.

(g) 'Family leave' means leave by reason of the serious illness of a family member.
28–42–2. Parental leave and family leave requirement.—(a) Every employee who has been employed by the same employer for twelve (12) consecutive months shall be entitled, upon advance notice to his or her employer, to thirteen (13) consecutive work weeks of parental leave or family leave in any two (2) calendar years. The

employee shall give at least thirty (30) days' notice of the intended date upon which parental leave or family leave shall commence and terminate, unless prevented by medical emergency from giving such notice. The director shall promulgate regulations governing the form and content of the employee's notice to the employer.

(b) Parental leave or family leave granted pursuant to this chapter may consist of unpaid leave. If an employer provides paid parental leave or family leave for fewer that thirteen (13) weeks, the additional weeks of leave added to attain the total of thirteen (13) weeks required by subsection (a) of this section may be unpaid.

(c) The employer may request that the employee shall provide the employer with written certification from a physician caring for the person who is the reason for the employee's leave which certification shall specify the probable duration of the employee's leave.

28–48–3. Employment and health benefits protection.—(a) Every employee who exercises his or her right to parental leave or family leave under this chapter shall, upon the expiration of such leave, be entitled to be restored by the employer to the position held by the employee when the leave commenced, or to a position with equivalent seniority, status, employment benefits, pay and other terms and conditions of employment; including fringe benefits and service credits that the employee had been entitled to at the commencement of leave.

(b) During any parental leave or family leave taken pursuant to this chapter the employer shall maintain any existing health benefits of the employee in force for the duration of such leave as if the employee had continued in employment continuously from the date he or she commenced such leave until the date he or she returns to employment pursuant to subsection (a) of this section.

(c) Prior to commencement of parental leave or family leave, the employee shall pay to the employer a sum equal to the premium required to maintain the employee's health benefits in force during the period of parental leave. The employer shall return such payment to the employee within ten (10) days following the employee's return to employment.

28–48–4. Effect on existing employment benefits.—(a) The taking of parental leave or family leave pursuant to this chapter shall not result in the loss of any benefit accrued before the date on which the leave commenced.

(b) Except as provided in § 28–48–3(b), nothing in this chapter shall be construed to entitle any employee who takes parental leave or family leave pursuant to this chapter to any benefit other than benefits to which the employee would have been entitled had he or she not taken the leave.

(c) Nothing in this chapter shall be construed to affect an employer's obligation to comply with any collective bargaining agreement or employment benefit plan that provides greater parental leave or family leave rights to employees than the rights provided under this chapter.

(d) The parental leave and family leave rights mandated by this chapter shall not be diminished by any collective bargaining agreement or by any employment benefit plan.

(e) Nothing is this chapter shall be construed to affect or diminish the contract rights or seniority status of any other employee of any employer covered by this chapter.

28–48–5. Prohibited acts.—(a) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter.

(b) It shall be unlawful for any employer to discharge, fine, suspend, expel, discipline, or in any other manner discriminate against any employee for exercising any right provided by this chapter.

(c) It shall be unlawful for any employer to discharge, fine, suspend, expel, discipline, or in any other manner discriminate against any employee for opposing any practice made unlawful by this title.

28–48–6. Judicial enforcement.—A civil action may be brought in the superior court by an employee or by the director against any employer to enforce the provisions of this title or of any order issued by the director pursuant to § 28–48–7. The court may enjoin any act or practice that violates or may violate any provision of this chapter, and may order such other equitable relief as is necessary and appropriate to redress such violation or to enforce any provision of this chapter.

28–48–7. Enforcement powers of the director.—If, after giving an employer written notice and an opportunity to be heard, the director finds that the employer has failed to comply with any provision of this chapter, the director may issue such orders as he or she deems necessary to protect the rights of any employee. The director shall promulgate such rules and regulations as are necessary and appropriate to carry out the provisions of this section.

28–48–8. Civil penalty for violations.—Any employer who shall violate any provision of this chapter, or of any order issued pursuant to § 28–48–7, shall be subject to a civil penalty of not more than one thousand dollars ($1,000). In the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense.

28–48–9. Severability.—If any provision of this chapter or the application thereof to any person or circumstance is held to be invalid by any court of competent jurisdiction, such invalidity shall not affect other provisions or applications of this chapter that can be given effect without the invalid provisions or application; and to that end, the provisions of this chapter are declared to be severable.

28–48–10. Notice.—(a) Each employer shall post and keep posted, in conspicuous places upon its premises where notices to employees and applicants for employment are customarily posted, a notice, to be approved by the agency, setting forth excerpts from, or summaries of, the pertinent provisions of this title and information pertaining to the filing of a charge.

■ The Rhode Island Supreme Court has on numerous occasions set forth the principles governing construction of Rhode Island statutes. At the outset, a construing court must be guided by the intent of the Legislature. *Lake v. State*, 507 A.2d 1349 (R.I.1986). That intent is determined by an examination of the language, nature and object of the statute. *Id.* The court should give the words of the statute their plain and ordinary meaning. *McGee v. Stone*, 522 A.2d 211 (R.I.1987). In construing a statute, a court should give effect to all parts of the statute in keeping with the statute's declared purpose. *Rhode Island Chamber of Commerce v. Hackett*, 122 R.I. 686, 411 A.2d 300 (1980). When the language of a statute is unambiguous and expresses a clear meaning, no room for statutory construction exists and the court is bound to give the words of the statute their plain and obvious meaning. *O'Neil v. Code Commission for Occupational Safety and Health*, 534 A.2d 606 (R.I.1987). If the language of the statute is clear and unambiguous and expresses a "single, definite, and sensible meaning," the statute must be interpreted literally. *Hackett*, 411 A.2d at 303. A court "shall not interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication." *State v. Feng*, 421 A.2d 1258, 1264 (R.I.1980). A court's duty is to construe a statute, not to redraft it. *Moretti v. Division of Intoxicating Beverages*, 62 R.I. 281, 5 A.2d 288 (1939).

### History of the Act

The Rhode Island General Assembly passed the Act in July of 1987. P.L.1987, ch. 366, §§ 1–2. The explanation note attached to the 1987 bill pronounced that the "act would *provide parental leave* for government employees and would also require employers with more than twenty-five employees to *provide parental leave.*" *See* "Explanation by the Legislative Council of An Act Relating to Parental Leave" attached to House Bill 87–H 5473 (emphasis added). The Act was not promulgated with a statement of purpose.

*See, e.g., McGee*, 522 A.2d at 216. The Act was amended in 1990. P.L.1990, ch. 380, §§ 1–4. The 1990 amendment did not affect § 28–48–8, which is the provision relied upon by Reid in support of her position that the Act does permit her to recover damages and/or a civil penalty. The 1990 amendment changed the title of the Act from "Parental Leave" to the "Rhode Island Parental and Family Medical Leave Act." P.L.1990, ch. 380, § 1. Additionally the amendment expanded the coverage of the Act to include leave to care for a seriously ill "family member" including a "parent, spouse, child, mother-in-law, father-in-law, or the employee himself or herself." P.L.1990, ch. 380, § 2. The explanation note attached to the bill supporting the 1990 amendment stated that "[t]his act provides that an employee of a company with 25 or more employees would be entitled to 18 [2] weeks of leave in a two year period because of the illness of a child, parent, spouse, in-law or the employee's own illness." *See* "Explanation By The Legislative Council Of An Act Relating To Labor Relations—Family Medical Leave," attached to House Bill 90–H 8980.

### Pertinent Provisions of the Act

There are several provisions of the Act which are pertinent to this analysis. Section 28–48–3 sets forth the statutory protections afforded to an employee who exercises his or her right to parental or family leave. Section 28–48–3(a) provides in part that

"[e]very employee who exercises his or her right to parental leave or family leave under this chapter shall, upon the expiration of such leave, be entitled *to be restored* * * * to the position held * * * when the leave commenced, or to a position with equivalent seniority, status, employment benefits, pay and other terms and conditions of employment; including fringe benefits and service credits * * *." R.I.G.L. § 28–48–3(a) (emphasis added).

The Act also prohibits certain actions on behalf of the employer. Section 28–48–5,

---

(b) Any employer that willfully violates this section shall be assessed a civil money penalty not to exceed $100 for each separate offense."

**2.** The eighteen week period was amended to a thirteen week period. *See* P.L.1990, ch. 380, § 2.

entitled "Prohibited Acts" provides that it shall be unlawful for any employer to

"(a) * * * interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter.

(b) * * * discharge, fine, suspend, expel, discipline, or in any other manner discriminate against any employee for exercising any right provided by this chapter.

(c) * * * discharge, fire, suspend, expel, discipline, or in any other manner discriminate against any employee for opposing any practice made unlawful by this title."

Section 28–48–6, captioned "Judicial enforcement" provides the jurisdictional basis for Reid's lawsuit. Section 28–48–6 provides that

"[a] civil action may be brought in the superior court by an employee or by the director against any employer *to enforce* the provisions of this title or of any order issued by the director pursuant to § 28–48–7. The court may *enjoin* any act or practice that violates or may violate any provision of this chapter, and may order *such other equitable relief* as is necessary and appropriate to redress such violation or to *enforce* any provision of this chapter." R.I.G.L. § 28–48–6 (emphasis added).

Section 28–48–8 sets forth the civil penalty for violations of the Act. That section provides that

"[a]ny employer who shall violate any provision of this chapter, or of any order issued pursuant to § 28–48–7 shall be subject to a *civil penalty* of not more than one thousand dollars ($1,000). In the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense." R.I.G.L. § 28–48–8 (emphasis added).

### Reid's Claim for Money Damages

 Initially I note that, unlike its Federal counterpart, the Act does not expressly provide for an award of money damages to an aggrieved employee. *See* 29 U.S.C. § 2617. In fact, the word "damages" does not appear anywhere in the Act. Reid therefore relies on § 28–48–8 in support of her argument that the General Assembly intended to permit an aggrieved employee to collect the civil penalty of up to $1,000 per day for "each day of [Citizen's] continuing violation of [the Act], dating from April 4, 1994."

This court does not agree with Reid's interpretation of the Act. Section 28–48–3 of the Act enumerates the remedies to which an aggrieved employee is entitled. Section 28–48–6 specifies the judicial procedures to be followed to enforce those rights. When read together, these sections support the premise that an employee is entitled to equitable relief only. Section 28–48–3 provides that upon the expiration of leave the employee is "entitled to be restored" to the pre-leave position. The plain and ordinary meaning of the word "restore" is "to bring back into existence * * * to bring back to a former, more desirable condition; * * * to put back; return, as to a former place, position, or rank." Random House Webster's College Dictionary 1148 (1992). The General Assembly specifically provided that the employee be returned to the *status quo ante*, it did not provide for an award of money damages. Additionally, I find as further evidence that the General Assembly intended to limit the employee to restoration of the status quo the second sentence of § 28–48–6 which speaks only of "enjoin[ing]," "other equitable relief," and "enforc[ing] any provision of this chapter." "Enforce" is defined as "[t]o put into execution; to cause to take effect; to make effective, as, to enforce a particular law, * * * to compel obedience to." Black's Law Dictionary 528 (6th ed. 1990) (emphasis added). Equitable relief compels a party to act or to refrain from acting. Consequently, the use of the word "enforce" in § 28–48–6 supports the premise that the General Assembly intended a civil action by an aggrieved employee to be one restricted to equitable relief. The equity language in § 28–48–6 is entirely consistent with § 28–48–3's provision that the employee be restored to her previous position.

Attaching a plain and ordinary meaning to the language of these sections, it is clear that the General Assembly intended to limit an employee's remedies under the Act to equita-

48

ble relief.[3] "It is a rule of statutory construction that an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed." *Centazzo v. Centazzo*, 509 A.2d 995, 998 (R.I.1986). "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). The Act provides for equitable relief only.

"It is highly appropriate therefore that this court should refrain from broadening by judicial interpretation the legislatively prescribed remedies in such a case unless, within the statute itself, we can find reasonable warrant for such action." *Martinuzzi v. Capitol Marble & Tile Co., Inc.*, 79 R.I. 115, 120, 84 A.2d 605, 607–08 (1951).

This court finds no "reasonable warrant" expressed in the statute to broaden the range of remedies prescribed to include money damages as "[i]t is solely the province of the legislature to supply [such] omission." *Id.* at 120, 84 A.2d at 607.

### Reid's Claim for Civil Penalties

 Reid claims that based on the language of § 28-48-8 she is entitled to collect the civil penalties assessed pursuant to that section. It is Reid's position that because the statute "clearly" provides for civil penalties she is entitled to the collection of those penalties. Citizens alleges that the "statute gives no hint that an employee-plaintiff is entitled to recover a civil penalty."

This court finds that Reid is not entitled to the civil penalty assessed in § 28-48-8 for several reasons. First, the intent of the act was to place an aggrieved employee back in the status quo, that is, to return the employee to the employment position that he or she had before the leave. It is clear from the language of the statute that an aggrieved employee is limited to equitable relief.

Furthermore, a civil penalty "[r]epresents *punishment* for specific activities." Black's Law Dictionary 246 (6th ed. 1990) (emphasis added). "Criminal fines, *civil penalties*, civil forfeitures, and taxes all share certain features: They *generate government revenues*, impose fiscal burdens on individuals, and *deter* certain behavior." *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (emphasis added). A well-accepted premise of our criminal justice system is that it is the government's province to punish and deter. Consequently, a statute providing for a civil penalty, *unless otherwise noted*, is a governmental tool used to punish and deter the violative behavior and to collect government revenue. Following this premise logically, any statutory civil penalty collected, *unless otherwise directed*, would inure to the government. *See e.g., Clinton Community School District v. Anderson*, 322 N.W.2d 73 (Iowa 1982); *Sanders v. Pacific Gas & Electric Co.*, 53 Cal.App.3d 661, 126 Cal.Rptr. 415 (1975); *In re Burk*, 66 Ind. App. 435, 118 N.E. 540 (1918); *Bryant v. Rich's Grill*, 216 Mass. 344, 103 N.E. 925 (1914); *Petersen v. J.F. Cunningham Co.*, 77 F. 211 (N.D.Cal.1896).

This court is aware that if the General Assembly wanted to provide for payment of a civil penalty to a person or entity other than the government it could. However, in this instance the General Assembly did not. The plain language of the statute does not provide for the payment of the civil penalty to the aggrieved employee and this court refuses to read such a provision into the statute. *See Moretti*, 62 R.I. 281, 5 A.2d 288.

For the reasons stated herein, Citizens' motion to dismiss Reid's claim for money damages and civil penalties pursuant to the Act is granted.

---

**3.** *See generally United States v. Burke*, 504 U.S. 229, 238, 112 S.Ct. 1867, 1872, 119 L.Ed.2d 34 (1992) (interpreting the statutory phrase "any other equitable relief as the court deems appro-priate," to preclude an award for compensatory or punitive damages); *see also Mertens v. Hewitt Associates*, —— U.S. ——, ——, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993).