**Jennifer MORAN, Plaintiff,**

v.

**GTECH CORPORATION, Defendant.**

**No. 96–214L.**

United States District Court,
D. Rhode Island.

March 19, 1997.

Patricia E. Andrews, Manuel Andrews, Providence, RI, for plaintiff.

Mark A. Pogue, Edwards & Angell, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This suit arises out of plaintiff Jennifer Moran's ("Moran") allegations of gender and pregnancy discrimination against her former employer. The matter is presently before the Court on a motion by defendant GTECH Corporation ("GTECH") to dismiss certain counts of Moran's multi-count complaint. Specifically, GTECH seeks dismissal of the claims brought pursuant to the Rhode Island Parental and Family Medical Leave Act (Count II),[1] the Rhode Island Civil Rights Act of 1990 (Count V–A),[2] and 42 U.S.C. §§ 1985(3) and 1986 (Counts VI–A and VII).[3] For the reasons that follow, the motion is granted in part and denied in part.[4]

1. R.I. Gen. Laws §§ 28–48–1 to –10.

2. R.I. Gen. Laws §§ 42–112–1 to –2.

3. The complaint labels two different claims as Count V; there are also two claims labeled as Count VI. In order to maintain some sense of clarity, the Court will refer to the second of each pair (the claims under review here) as Counts V–A and VI–A.

## I. Background

For the purposes of deciding this Rule 12(b)(6) motion to dismiss, the Court must treat the factual allegations in the complaint as true. *See Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562, 568 (D.R.I.1996). Read in this light, the facts essential to the resolution of this motion are as follows:

Jennifer Moran was hired by GTECH as a Product Marketing Analyst in November 1992. In March 1993, Moran was informed that Janice Olson ("Olson"), a member of GTECH's Marketing–Research Department, had been assigned as her immediate supervisor. Sometime in April or May, plaintiff informed Olson that she was pregnant, and that she would be taking maternity leave at the end of the year. Plaintiff conveyed the same information to Ellen Donahue ("Donahue"), who held a more senior position in the department and was apparently Olson's immediate supervisor.

Moran alleges that from this time forward, her supervisors discriminated against her on account of her sex, pregnancy, and desire to take maternity leave. The complaint details how plaintiff's supervisors set out on a course to prevent her from developing the skills needed to produce a satisfactory work product, so that GTECH would have reason to terminate her soon after she returned from maternity leave. In particular, Donahue instructed Olson not to give plaintiff any training or work in the field of market research, even though such assignments were contemplated when Moran was shifted to Olson's supervision. When Donahue later authorized Olson to assign market research projects to plaintiff, Donahue was aware that plaintiff had not been given any training in the field, and thus knew that Moran would not be able to complete these projects in a satisfactory manner.

4. Originally, GTECH also sought dismissal of a claim based on the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§ 28–5–1 to –42 (Count IV), as well as plaintiff's claim for emotional distress under state common law (Count VIII). GTECH has since withdrawn its motion as to Count IV, and Moran has voluntarily agreed not to pursue Count VIII.

The stage was set for the plaintiff's ultimate termination just before she went out on leave, when she was first informed that her position would change upon her return. Plaintiff would report to a new supervisor, the Director of Strategic Planning, who had not yet been hired. Although the new position would involve different duties and responsibilities, Donahue told plaintiff that she considered Moran qualified to perform the new job. Donahue also assured plaintiff that she did not have to worry about losing her job at GTECH, as her position at the company was secure. With this understanding, Moran went out on maternity leave in mid-November 1993.

Plaintiff returned from maternity leave in February 1994, and was assigned to a new supervisor, T.P. Law ("Law"). Moran tried to meet with her new supervisor on several occasions, but was unable to do so throughout the first two months in her new position. During this period, Moran was given very little substantive work, and received no guidance or feedback from Law or any other supervisory personnel, including her prior supervisors. When Moran was finally able to meet with Law in April, she was told that her skills did not match the position she was currently holding, and that she would need to find another position at GTECH within one month. Plaintiff was terminated shortly thereafter, effective May 27, 1994.

While the facts of this case seem to revolve around Moran's pregnancy and maternity leave, she contends that a general sense of gender-based discrimination contributed to her termination as well. Plaintiff claims that for the period in question, the only other person terminated from the Marketing Department was a woman—under similar post-maternity leave circumstances.[5] Moreover, plaintiff notes that the two positions left vacant by these terminations were filled by men, and that the Marketing Department has hired a number of new employees since her firing, all of whom are male. Based on these facts, plaintiff maintains that she was terminated from GTECH not only in retaliation for her desire to take maternity leave, but on account of her gender as well.

On October 18, 1994, Moran filed employment discrimination charges against GTECH with the Equal Employment Opportunity Commission and the Rhode Island Commission for Human Rights. Plaintiff received right to sue notices from both agencies in due course,[6] and filed the present action on April 16, 1996. Counts I though IV of the complaint allege discrimination on account of pregnancy and childbirth, in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654; the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws §§ 28–48–1 to –10; the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§ 28–5–1 to –42. Counts V and VI allege sex-based discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Right Act of 1991, 42 U.S.C. §§ 2000e to 2000e–17; and the Rhode Island Fair Employment Practices Act, *supra.* Counts V–A to VII maintain that GTECH's conduct deprived plaintiff of her civil rights in violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws §§ 42–112–1 to –2; and the "Ku Klux Klan Act," 42 U.S.C. §§ 1985(3) and 1986. Finally, Count VIII purports to allege a claim for infliction of emotional distress under state common law.

The Court is now asked to resolve GTECH's motion to dismiss four counts of the complaint: Moran's claims under the Rhode Island Parental and Family Medical Leave Act (Count II), the Rhode Island Civil Rights Act of 1990 (Count V–A), and 42 U.S.C. §§ 1985(3) and 1986 (Counts VI–A and VII). After hearing the arguments of counsel, the Court took the matter under advisement. The motion is now in order for decision.

---

**5.** This termination is the subject of another lawsuit in this district, which contains allegations similar to those in the present action. *See MacNider v. GTECH Corp.,* C.A. No. 96–215B (D.R.I. filed April 16, 1996).

**6.** The EEOC issued plaintiff's right to sue notice on January 17, 1996, and the State Human Rights Commission issued its notice on March 20, 1996.

## II. Standard for Decision

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990).

## III. Discussion

### A. Rhode Island Parental and Family Medical Leave Act

The Rhode Island Parental and Family Medical Leave Act ("Leave Act") provides employees with a statutory right to take leave from employment for reasons of childbirth, adoption, or to care for a family member stricken with a serious illness. R.I. Gen. Laws § 28–48–3(a) sets forth some of the protections relevant to the present case:

> Every employee who exercises his or her right to parental leave or family leave under this chapter shall, upon the expiration of that leave, be entitled to be restored by the employer to the position held by the employee when the leave commenced, or to a position with equivalent seniority, status, employment benefits, pay, and other terms and conditions of employment, including fringe benefits and service credits that the employee had been entitled to at the commencement of leave.

Also of relevance is § 28–48–5, which prohibits an employer from interfering with, punishing, or retaliating against an employee who desires to exercise his or her right to take parental or family leave.[7]

Taking the allegations in the complaint as true, plaintiff has arguably pleaded a violation of the Leave Act: the complaint recounts a detailed sequence of events by which GTECH gave plaintiff inferior work assignments, failed to place her in a comparable position after leave, and ultimately fired plaintiff for exercising her statutorily protected right to parental leave. For the purposes of this motion, GTECH does not contest the substance of the allegations. However, GTECH submits that the remedies sought by plaintiff are not available under the statute. It is to this question that the Court now turns.

Section 28–48–6 establishes that employees can file a civil action to redress violations of the Leave Act, and sets forth the remedies available in such an action:

> A civil action may be brought in the superior court by an employee ... against any employer to enforce the provisions of this title.... The court may enjoin any act or practice that violates or may violate any provision of this chapter, and may order such other equitable relief as is necessary and appropriate to redress the violation or to enforce any provision of this chapter.

After an exhaustive and well-reasoned review of the legislative history and language of the statute, Judge Lisi of this District reached the conclusion that the applicable provisions of the statute, read together, clearly established that monetary damages are not available to an employee pursuing an action under § 28–48–6. *See Reid v. Citizens Sav. Bank/Citizens Trust Co.,* 887 F.Supp. 43, 46–48 (D.R.I.1995). Judge Lisi determined that an employee's primary right under § 28–48–3(a) is to be restored to the pre-leave or comparable position, and also noted that un-

---

7. Section 28–48–5 provides:

(a) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter.

(b) It shall be unlawful for any employer to discharge, fine, suspend, expel, discipline, or in any other manner discriminate against any employee for exercising any right provided by this chapter.

(c) It shall be unlawful for any employer to discharge, fine, suspend, expel, discipline, or in any other manner discriminate against any employee for opposing any practice made unlawful by this title.

like its federal counterpart, the state Leave Act does not expressly provide for an award of "damages" to an aggrieved employee. *Compare* 29 U.S.C. § 2617. Thus, she held that only equitable relief—targeted at returning the employee to the *status quo ante*—was available to a plaintiff seeking to redress a violation of the Leave Act. *See Reid,* 887 F.Supp. at 47–48.[8]

This Court finds Judge Lisi's reasoning persuasive, and agrees that the only relief available under the statute is equitable relief, aimed at restoring the employee to his or her rightful place—where he or she would have been were it not for the unlawful discrimination. Of course, this is not to say that the only relief available is an injunction ordering an employee reinstated to a prior job position or title. As Judge Lisi noted, and the language of the statute makes clear, both injunctive and equitable relief are available. *See id.* at 47.[9] There may be other, non-injunctive forms of restorative or "make-whole" relief (i.e., back pay) that could qualify as "such other equitable relief as is necessary and appropriate to redress the violation," depending on the facts of the particular case.

As a policy matter, the availability of equitable remedies beyond an injunction might be necessary to make the statutorily created rights and prohibitions meaningful. For instance, if only reinstatement relief were available, some violations of the statute essentially could go unpunished or unremedied. Consider the position of an employee who is penalized for taking leave: if the only remedy is a reinstatement order, without other

equitable relief, in the eyes of the employee the time lapse between the adverse personnel action and any court ordered reinstatement (perhaps months or years) would have the same effect as a suspension without pay—thus serving the employer's prohibited purpose of punishing the employee for taking leave.[10] This anomalous result would fall well short of returning the employee to the *status quo ante,* and cannot have been within the legislative intent in enacting parental and family leave protections for employees. *Compare Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975) (injunctive remedy, without back pay, is often inadequate to make Title VII plaintiffs whole).

Moreover, in some cases reinstatement may not be a viable option for an aggrieved employee. By their very nature, wrongful terminations, whether leave-related or otherwise, can often create contentious relationships between the employee and the employer, supervisors, and other personnel. Clearly, the difficulty of returning to such a hostile work environment might render reinstatement impracticable, if not impossible. *See Selgas v. American Airlines, Inc.,* 104 F.3d 9, 12 (1st Cir.1997) (recognizing that reinstatement may not be feasible in all cases of employment discrimination). Therefore, in order for the rights and protections established by the Leave Act to retain some utility, the equitable relief made available under § 28–48–6 must encompass something more than an injunction.[11]

Accordingly, to the extent GTECH bases its argument for dismissal of this claim on

---

8. Judge Lisi also found that the civil penalties provision of the statute, § 28–48–8, did not authorize an award of monetary damages to a plaintiff, as any such penalties were to be paid directly to the government, not to the aggrieved employee. *See Reid,* 887 F.Supp. at 48.

9. Any other holding would render meaningless the language in § 28–48–6 authorizing the Court to "order such other equitable relief as is necessary and appropriate."

10. The fact that the employer could face civil penalties under § 28–48–8, payable to the government, might deter an employer to some extent. Even so, the effect is still a suspension without pay as far as the employee is concerned.

11. The Court notes that the Rhode Island legislature has, on occasion, explicitly included "back pay" among the remedies made available to a plaintiff. *See* R.I. Gen. Laws § 28–5–24 (back pay remedy under Fair Employment Practices Act); R.I. Gen. Laws § 28–50–5 (remedies under Whistleblowers Act). Although no such reference can be found in the Leave Act, the Court believes that the proper reading of the remedial provision—in order to give effect to the purpose of the statute—is to include back pay in the category of "such other equitable relief ... necessary and appropriate to redress the violation."

the fact that plaintiff does not seek reinstatement, that contention is unavailing. A fair reading of the complaint suggests that plaintiff does seek the type of equitable, restorative relief made available under the statute. While a specific request for "back pay" or "unpaid wages" does not appear in plaintiff's prayer for relief, her request that GTECH "make Plaintiff whole" is sufficient to signify a claim for such restorative relief. Thus, the Court will allow plaintiff to pursue her claim against GTECH under the Leave Act.

The parties have also raised the question of whether front pay can be considered an equitable remedy under the Leave Act. While the issue has not been decided in the context of this statute, the First Circuit has determined that front pay can be an equitable remedy for purposes of Title VII. *See Lussier v. Runyon*, 50 F.3d 1103, 1107–08 (1st Cir.), *cert. denied*, 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995). In so holding, the Court "acknowledg[ed] that front pay, within the employment discrimination universe, is generally equitable in nature," *id.* at 1108, and further noted that "the basic function of a front pay award is to make victims of discrimination whole." *Id.* at 1112 n. 10. As a result, the Court concluded that front pay was an available equitable remedy under Title VII, where other equitable remedies—i.e., reinstatement and back pay—were either unavailable or insufficient to make a plaintiff whole.[12] *See id.* at 1107–08; *see also Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 614–16 (1st Cir.1985) (front pay is an equitable remedy under analogous relief provision of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b)).

While the First Circuit's discussion of the relief available under Title VII does not bind this Court in its interpretation of the state statute at issue here, it is certainly instructive, especially since Rhode Island courts generally look to federal Title VII decisions for guidance when considering claims brought under parallel state employment discrimination laws. *See Narragansett Elec. Co. v. Rhode Island Comm'n for Human Rights*, 118 R.I. 457, 374 A.2d 1022, 1023 (1977). Additionally, the make-whole function of a front pay award is entirely consistent with the Leave Act's purpose of restoring an employee to his or her rightful place. In short, there appears to be nothing in the text or purpose of the statute to prevent a court from awarding front pay as a component of the equitable relief authorized by § 28–48–6, when doing so would be necessary to fully effectuate the make-whole purpose of the statute.

However, at this juncture it would be premature for the Court to determine conclusively whether front pay is an available remedy under the Leave Act. As of yet, it is unclear whether such a ruling will be necessary to the outcome of this case, as ultimately front pay might not be needed to make this plaintiff whole. "It follows *a fortiori* from the equitable nature of the remedy that . . . . trial courts [are afforded] wide latitude to award or withhold front pay according to established principles of equity and the idiocratic circumstances of each case." *Lussier*, 50 F.3d at 1108. Until the facts are fully developed at trial, the Court will not be in a position to determine whether an award of front pay—considered in light of any other equitable relief that may be appropriate—will be a swatch of the remedial fabric this Court must tailor to restore plaintiff to her rightful place. For this reason, the Court will reserve judgment on the question of whether front pay is an available equitable remedy under § 28–48–6 until that issue is squarely presented for decision.[13]

**B. Rhode Island Civil Rights Act of 1990**

■ Plaintiff has also brought a claim pursuant to the Rhode Island Civil Rights Act of

---

**12.** As the First Circuit has since noted, front pay is a limited remedy, available only where back pay does not fully redress the violation and reinstatement is impossible or impracticable. *See Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 954–55 (1st Cir.1995). In these instances, front pay compensates the victim of discrimination from the conclusion of trial through the point at which the employee has an opportunity to return as nearly as possible to the economic situation he or she would have enjoyed but for the discrimination. See *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 12–13 (1st Cir.1997).

**13.** At that time, the Court might find it appropriate to certify a question to the Rhode Island Supreme Court concerning the availability of front pay as a remedy under § 28–48–6.

1990 ("Civil Rights Act"), alleging that GTECH's conduct deprived her of certain rights protected by the statute. R.I. Gen. Laws § 42–112–1 enumerates and defines the rights to which all Rhode Island citizens are entitled:

> (a) All persons within the state, regardless of race, color, religion, sex, handicap, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) For purposes of this section, the right to "make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property" shall include the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.
>
> (c) Nothing contained herein shall be construed to affect chapter 14.1 of title 37, chapter 5.1 of title 28 or any other remedial programs designed to address past societal discrimination.

The remedies available to an aggrieved party are set forth in § 42–112–2:

> A person whose rights under the provision of § 42–112–1 have been violated may commence a civil action for injunctive relief and other appropriate equitable relief, and for the award of compensatory and exemplary damages. An aggrieved person who prevails in an action authorized by this section, in addition to other damages, shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

As with plaintiff's claim under the Leave Act, GTECH does not for the purposes of this motion contest the substance of Moran's claim under the Civil Rights Act. Instead, GTECH contends that this claim is not a proper subject for the Court's supplemental jurisdiction, because the state courts have not yet had an adequate opportunity to interpret the statute or to delineate the contours of a cause of action under § 42–112–2.[14] Essentially, GTECH asks this Court to exercise its discretion under 28 U.S.C. § 1367(c)(1) to decline to assert supplemental jurisdiction over a claim which "raises a novel or complex issue of State law."

The Court finds GTECH's argument unconvincing, as there is sufficient guidance from the state courts concerning how a cause of action under the Civil Rights Act should be structured. In *Ward v. City of Pawtucket Police Dep't,* 639 A.2d 1379 (R.I.1994), the Rhode Island Supreme Court recognized that the Civil Rights Act was enacted as a direct response to the United States Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *See Ward,* 639 A.2d at 1381. In *Patterson,* the Court narrowly interpreted the protections afforded by the federal Civil Rights Act of 1866, 42 U.S.C. § 1981, concluding that § 1981 provided protection against racial discrimination in contract formation only, and not against discrimination in other contexts. *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369–70. Thus, the Court concluded that racial harassment and discrimination in the workplace—at least when unrelated to the formation of the employment contract—was not actionable under § 1981. *Id.* at 179–80, 109 S.Ct. at 2373–74.

According to the Rhode Island Supreme Court, the Civil Rights Act was intended to extend civil rights protections to those settings and classes of individuals excluded by *Patterson,* and thus "provide[ ] broad protection against all forms of discrimination in all phases of employment." *Ward,* 639 A.2d at

---

**14.** Specifically, GTECH suggests six questions left unanswered by the state courts that would need to be resolved before a Civil Rights Act claim could be tried: what are the elements of a *prima facie* case; what is the burden of proof; who bears this burden of proof, and does the burden shift; whether and how must discriminatory intent be proven; what defenses are available; and what is the nature of the compensatory damages available.

1381. Indeed, the Civil Rights Act appears to be modeled after its federal counterpart, as the two statutes use almost identical language; as far as the Court can discern, the only substantive differences between R.I. Gen. Laws § 42–112–1 and 42 U.S.C. § 1981 are those needed to bridge the gap left by *Patterson.*[15]

Given the fact that the state statute was patterned after the federal statute, the logical inference to be drawn is that the state legislature intended a cause of action pursuant to § 42–112–2 to mirror the federal cause of action provided by § 1981. *See Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights*, 484 A.2d 893, 897–98 (R.I. 1984) (state courts look to federal employment discrimination decisions for guidance when considering claims brought pursuant to parallel state statutes); *see also Marley v. United Parcel Serv., Inc.*, 665 F.Supp. 119, 127–28 (D.R.I.1987) (similar). Therefore, it is reasonable to conclude that the *prima facie* case and burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), and subsequent federal discrimination cases are equally applicable to claims brought pursuant to the Civil Rights Act.[16]

**15.** 42 U.S.C. § 1981 provides as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**16.** Judge Pettine of this District has implicitly adopted this reasoning in evaluating a claim under § 42–112–2. In *Bina v. Providence College*, 844 F.Supp. 77 (D.R.I.), *aff'd*, 39 F.3d 21 (1st Cir.1994), *cert. denied*, 514 U.S. 1038, 115 S.Ct. 1406, 131 L.Ed.2d 292 (1995), plaintiff had

The Court recognizes that "a federal court should be reluctant to retain [supplemental] jurisdiction over a question for which state jurisprudence gives inadequate guidance." *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 776 (D.C.Cir.1982). However, plaintiff's claim under the Civil Rights Act does not present such a situation, as the Rhode Island Supreme Court has provided an adequate outline for structuring this cause of action through its examination of the nature and purposes of the statute.[17] Because plaintiff's state claim arises out of the same common nucleus of operative facts as her federal employment discrimination claims, interests of judicial economy and fairness make the state Civil Rights Act claim a proper subject of the Court's supplemental jurisdiction under 28 U.S.C. § 1367. For these reasons, the Court will allow plaintiff to pursue her claim under the Civil Rights Act in this forum.

## C. 42 U.S.C. §§ 1985(3) and 1986

The "deprivation clause" of 42 U.S.C. § 1985(3) provides a cause of action against anyone who conspires to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[18] Section 1986

brought employment discrimination claims under both § 42–112–2 and Title VII. While Judge Pettine did not discuss the state claim explicitly, he dismissed all discrimination claims in light of his Title VII analysis. Thus, Judge Pettine seems to have recognized that the burden-shifting framework of Title VII (the same legal framework used in § 1981 actions) applies to claims under the state Civil Rights Act.

**17.** As with the question of remedies under the Leave Act, if a further issue arises concerning the nature or scope of the cause of action under the Civil Rights Act, the Court would consider certifying a question to the Rhode Island Supreme Court.

**18.** Section 1985(3) provides:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges .and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any state or territory from giving or securing to all persons ... the equal protection of the laws ... the party so

establishes a parallel cause of action against anyone who, having knowledge of a § 1985 conspiracy and the power to prevent such a conspiracy, neglects to do so.[19] Plaintiff maintains that GTECH's actions regarding her employment and termination amounted to a conspiracy to deprive her of her civil rights, giving rise to a cause of action under both §§ 1985(3) and 1986.

GTECH argues that Moran's claims under these sections of the civil rights statute must fail in light of *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), where the United States Supreme Court squarely held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378, 99 S.Ct. at 2352. This holding appears to serve as a direct bar to plaintiff's § 1985(3) claim, as she seeks to vindicate her right to be free from gender or pregnancy-based discrimination in the private workplace, a right that has been created by Title VII, not by constitutional command. *See id.* at 384–85, 99 S.Ct. at 2355–56 (Stevens, J., concurring).

Faced with this argument, Moran replies that she is using § 1985(3) to vindicate a right independent of Title VII, and cites post-*Novotny* cases where plaintiffs have been allowed to pursue both Title VII and § 1985(3) claims.[20] Plaintiff points out that *Novotny* was not a preemption decision; in other words, *Novotny* should not be read to imply that a plaintiff cannot pursue both a Title VII claim and a § 1985(3) claim against an employer based on the same facts. Thus, plaintiff maintains that *Novotny* does not bar this § 1985(3) action, because GTECH in-

fringed on such an "independent right"— plaintiff's right under the fourteenth amendment to be free from discrimination.

While the Court agrees with this reading of *Novotny*, it is of no avail to plaintiff, as there is no such independent right to apply. On the contrary, Title VII is the only possible source of the anti-discrimination right asserted by plaintiff against GTECH. The rights and privileges guarantied by the fourteenth amendment are protected only against state action and those acting under the color of state law. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Therefore, when there are allegations of employment discrimination in the *public* sector—as in all the cases cited by plaintiff— both Title VII and § 1985(3) claims can be maintained, as there is an additional equal protection right to be vindicated vis-a-vis the state actor, independent of Title VII's protections. *See Padway v. Palches*, 665 F.2d 965, 969 (9th Cir.1982). However, the Constitution does not vest plaintiff with any right to be free from discrimination by a private employer such as GTECH.[21] As this is purely a right created by Title VII, *Novotny* is dispositive.

Perhaps recognizing the weakness of her position, at oral argument plaintiff suggested that *Novotny* should no longer control the Court's decision, in light of recent changes to the Title VII scheme. As counsel correctly points out, *Novotny* was decided at a time when Title VII authorized only equitable relief, so that a Title VII plaintiff could not recover general or punitive damages; moreover, at that time neither party to a Title VII action had a right to a jury trial. Therefore,

---

injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**19.** Section 1986 provides:
Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

**20.** Plaintiff relies on *Volk v. Coler*, 845 F.2d 1422 (7th Cir.1988); *Padway v. Palches*, 665 F.2d 965 (9th Cir.1982); and *Scott v. City of Overland Park*, 595 F.Supp. 520 (D.Kan.1984).

**21.** While plaintiff makes passing reference to state contracts and federal funds received by GTECH, this is certainly not enough to render GTECH a "state actor" and thereby constitutionalize plaintiff's employment discrimination claim. *See Rodriguez–Garcia v. Davila*, 904 F.2d 90, 96–100 (1st Cir.1990) (discussing when a private entity can be considered a "state actor" for claims under 42 U.S.C. §§ 1983 and 1985(3)).

part of what motivated the *Novotny* decision was the Court's concern that plaintiffs would use an action under § 1985(3) to circumvent the limitations of a Title VII action. *See Novotny*, 442 U.S. at 372–76, 99 S.Ct. at 2349–2351. Plaintiff argues that this concern is no longer evident, since a Title VII plaintiff can now request a jury trial and claim compensatory and punitive damages in cases of intentional discrimination.[22] For this reason, plaintiff maintains that *Novotny* is no longer persuasive, and urges this Court to allow her to pursue parallel actions under Title VII and § 1985(3).

 Even if the Court were to accept this invitation to ignore Supreme Court precedent,[23] the Court cannot ignore the language or purpose of § 1985(3). Section 1985(3) itself creates no substantive rights; it merely provides a vehicle for remedying violations of the rights enumerated in that section—the rights, privileges, and immunities of United States citizenship. *See United Bhd. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 832–33, 103 S.Ct. 3352, 3358–59, 77 L.Ed.2d 1049 (1983). Thus, § 1985(3) provides a limited cause of action, targeting only those conspiracies which deprive victims of constitutionally protected rights, privileges, and immunities. *See Libertad v. Welch*, 53 F.3d 428, 446–50 (1st Cir.1995). In order to effect this "intended, constitutional purpose and prevent its use as a 'general federal tort law,'" *Libertad*, 53

F.3d at 447 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)), a plaintiff alleging a private conspiracy to deprive him of his civil rights must demonstrate that the conspiracy is "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Libertad*, 53 F.3d at 446.[24]

Simply stated, this action does not involve a right within the scope of § 1985(3), because the alleged private conspiracy is not aimed at the deprivation of a constitutional right guaranteed against both official and private encroachment.[25] As discussed above, the Constitution affords plaintiff civil rights protection only as against the state and state actors. Because the right asserted by plaintiff here—to be free from discrimination by a private actor—is a creature of statutory enactment, it is not a right to which § 1985(3) extends protection. Thus, plaintiff's complaint fails to state a claim under § 1985(3). Consequently, plaintiff's claim under § 1986 also fails, since liability under this section is predicated on a violation of § 1985(3). *See D'Amario v. Russo*, 718 F.Supp. 118, 124 (D.R.I.1989).[26]

## IV. Conclusion

For the forgoing reasons, the Court concludes that plaintiff should be allowed to pursue her claims under the Rhode Island Parental and Family Medical Leave Act and the Rhode Island Civil Rights Act of 1990.

**22.** These changes in the Title VII scheme were made by § 102 of the Civil Rights Act of 1991, codified at 42 U.S.C. § 1981a.

**23.** While the Court would be hesitant to overlook direct Supreme Court precedent in any instance, plaintiff's reasons for doing so in this case are far from convincing. While Title VII has been altered significantly, the one feature that "plays such a crucial role in the scheme established by Congress in Title VII," the administrative process by which claims are filed with the EEOC, remains intact. *See Novotny*, 442 U.S. at 376, 99 S.Ct. at 2351. Thus, one of the primary concerns expressed by the Court in *Novotny* remains viable today.

**24.** In *Libertad*, the First Circuit also considered the "hindrance" clause of § 1985(3), and found that an action under that clause did not require that the right allegedly infringed be one guaranteed against private as well as public encroach-

ment; it sufficed that the conspiracy was intended to influence the activity of the state with respect to securing constitutionally protected rights. *See Libertad*, 53 F.3d at 449–50. However, only the deprivation clause of § 1985(3) is at issue here, as this is not a case where GTECH allegedly conspired to influence the state's conduct with respect to plaintiff's civil rights.

**25.** To date, the Supreme Court has found that the Constitution guaranties only two rights against both official and private encroachment: the right to be free from involuntary servitude and the right of interstate travel. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278, 113 S.Ct. 753, 764, 122 L.Ed.2d 34 (1993).

**26.** In light of this determination, the Court need not consider GTECH's alternative arguments for dismissal: that a corporation cannot conspire with itself; and that the claims have not been pled with the requisite specificity.

However, the Court also concludes that the pleaded facts in this case do not support a claim for relief under 42 U.S.C. §§ 1985(3) and 1986. Accordingly, GTECH's motion to dismiss is denied as to Counts II and V–A of the complaint, and granted as to Counts VI–A and VII.

Further, the Court acknowledges that GTECH has withdrawn its motion to dismiss Count IV, and that plaintiff has voluntarily agreed to the dismissal of Count VIII.

It is so ordered.